IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GEOTAG, INC. and IP ANALYTICS, LLC | § § § | |
| *Plaintiffs* | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| RAJ V. ABHYANKER and RAJ ABHYANKER, P.C. d/b/a LEGALFORCE and d/b/a LEGALFORCE R.A.P.C. WORLDWIDE | § § § § | **Demand For Jury Requested** |
| *Defendants* | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs GeoTag, Inc. ("GeoTag") and IP Analytics, LLC ("IP Analytics")(collectively "Plaintiffs") file this Plaintiffs' Original Complaint against Defendants Raj V. Abhyanker ("Abhyanker") and Raj Abhyanker, P.C. d/b/a Legalforce and d/b/a Legalforce R.A.P.C. Worldwide (collectively "Defendants") and would respectfully show the Court as follows:

### I.  Parties

1.      Plaintiff GeoTag, Inc. is a Texas Corporation.  GeoTag's principal place of business is located in Collin County, Texas.

2.      Plaintiff IP Analytics, LLC is a Delaware Limited Liability Company.  The members of IP Analytics, LLC are: (a) Elizabeth Morgan, who is a resident of, and citizen of, the State of Texas, and (b) Dynamic Replicator, LP, whose limited partner, Elizabeth Morgan, is a resident of, and citizen of, the State of Texas.  The general partner of Dynamic Replicator, LP is SoAmex Ventures, LLC, whose sole member, Elizabeth Morgan, is a resident of, and citizen of, the State of Texas.

3.      Defendant Raj V. Abhyanker is an individual residing in Mountain View, California and is a citizen of the State of California and no other state.  Raj Abhyanker may be served with process at 451 N. Shoreline Blvd., Mountain View, California 94043.

4.      Defendant Raj Abhyanker, P.C. is a California law firm that does business as "Legalforce" and "Legalforce R.A.P.C. Worldwide" with its principle place of business in, and is a citizen of, California.  Raj Abhyanker, P.C. may be served with process by serving its registered agent, Raj Abhyanker, P.C. at 1580 W. El Camino Real, Suite 13, Mountain View, California 94040.

## II. Jurisdiction and Venue

5.      The amount in controversy in this case, exclusive of interest and costs, far exceeds $75,000.  Thus, the subject matter in controversy is in excess of the minimum jurisdictional limits of this Court.  Further, as demonstrated above there is complete diversity between the Plaintiffs and the Defendants.   Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

6.      This Court has specific jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of conducting business in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendants, and the assumption of jurisdiction over said Defendants will not offend traditional notions of fair play and substantial justice. The causes of action arise directly from the Defendants' contacts with the forum state.

7.      Defendant Abhyanker, an attorney, contacted GeoTag in Texas, via email and telephone, and asked if GeoTag would sell him patents and/or permit him to revive and prosecute patent applications.  Abhyanker offered to travel to Texas to present proposals involving the

patent applications and other investment opportunities. On November 4, 2013, Abhyanker traveled to Texas and met, face-to-face, with the president of GeoTag and its IP attorneys in Dallas, Texas. Over the next few days, Abhyanker continued to have discussions via telephone with GeoTag's IP attorneys, who are located in Texas. On November 11, 2013, Abhyanker prepared and emailed to GeoTag's CEO, John Veenstra, in Texas, a USPTO Power of Attorney. At all relevant times, GeoTag had its principal place of business in Collin County, Texas. Abhyanker filled in the information on the Power of Attorney form for GeoTag to appoint Raj Abhyanker, P.C. (which he identified as Patent Practitioner 55952)[1] so he could represent GeoTag before the USPTO, and sent the Power of Attorney form to Veenstra at the principal place of business of GeoTag in Collin County, Texas. Veenstra, on behalf of GeoTag, signed the Power of Attorney in Texas, and returned it to Abhyanker. Thereafter, in January of 2014, Abhyanker again traveled to Texas and met face-to-face with GeoTag and its attorneys. At some point, as explained in detail below, Abhyanker misused the Power of Attorney. All of the causes of action asserted herein arise directly from the Power of Attorney that Abhyanker and Raj Abhyanker, P.C. obtained from GeoTag in Texas. Raj Abhyanker, P.C. and Abhyanker researched and discovered that GeoTag was located in Texas, deliberately and purposefully sought out a relationship with GeoTag in Texas, engaged in business with GeoTag in Texas, entered into a Power of Attorney to represent a Texas entity, and damaged or converted the intellectual property of GeoTag.

---

[1] Abhyanker's email was signed by "Legalforce" which the email described as follows: "About Legalforce RAPC Worldwide - Legalforce RAPC Worldwide is a leading general practice law firm specializing in serving the diverse needs of individuals, businesses, and institutions worldwide. RAPC Worldwide is a proudly selected law firm in the Legalforce network. Each Legalforce network firm is an independent law firm authorized and regulated by the State Bar in which it is licensed, and that shares the aim of upholding high ethical standards while offering exceptional legal expertise and access with an uncompromising commitment to client needs."

8.      Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2) and (b)(3) because Defendants' contacts with the Eastern District of Texas would be sufficient to subject those Defendants to personal jurisdiction if the Eastern District of Texas were a separate state, and a substantial part of the events or omissions giving rise to Plaintiffs' claims against Defendants occurred in the Eastern District of Texas.

## III.  Facts

9.      Raj Abhyanker is a patent attorney, licensed to practice in California and in the United States Patent and Trademark Office ("USPTO").  Abhyanker is also the majority owner of Raj Abhyanker, P.C. which does business under the assumed name of Legalforce and Legalforce R.A.P.C. Worldwide.  Abhyanker, individually, is a named inventor of several patents and patent applications.

10.     Prior to 2007, Abhyanker helped found a company called Fatdoor, Inc. ("Fatdoor I").  In 2007, Abhyanker assigned three U.S. Patent Applications (Serial Nos. 11/827,400, 11/731,465, and 11/653,194) (collectively the "GeoTag Patent Applications") to Fatdoor I.  After attempting, but failing, to launch a social media platform in 2007 in the San Francisco area, Abhyanker was ousted from or left Fatdoor I.  In April of 2008, Jennifer Dulski was hired as the new CEO of Fatdoor I, and the company was completely relaunched as "Center'd Corporation." Center'd Corporation became the owner of the GeoTag Patent Applications.  In 2010, Center'd Corporation developed new technology for a deals-based engine, and took the company in a new direction.  In late 2010, Center'd Corporation assigned 100% ownership interest in the GeoTag Patent Applications to GeoTag.  GeoTag recorded the assignment with the USPTO on December 10, 2010.

11.     On October 23, 2013, attorney Abhyanker filed provisional patent applications with the USPTO for what he claimed were "new ideas."  Because Abhyanker's provisional patent applications had a 2013 priority date, he needed an earlier priority date to increase their value.  Therefore, Abhyanker claimed that his idea was an improvement on, or an extension of, and continuation of, the GeoTag Patent Applications.  Abhyanker immediately encountered several problems with his plan.  First, the GeoTag Patent Applications had since gone abandoned and needed to be revived in order for Abhyanker to be able to claim priority to them and gain the benefit of their earlier priority date.  Second, and more fundamental, Abhyanker was not the owner of the GeoTag Patent Applications.

12.     On October 28, 2013, Abhyanker contacted John Veenstra, CEO of GeoTag, about the three GeoTag Patent Applications.  At the time, Veenstra lived in, and GeoTag had its only place of business in, Collin County, Texas.  On November 4, 2013, Abhyanker presented GeoTag with a proposal that consisted of several points, one of which was reviving the GeoTag Patent Applications.  GeoTag did not accept Abhyanker's offer and instead, referred the matter to GeoTag's IP counsel in Dallas, Texas.  At the same time, Abhyanker made a pitch to GeoTag regarding acquiring equity in his new company Fatdoor, Inc. ("Fatdoor II").

13.     While Abhyanker's proposals were being discussed, Abhyanker suggested that he be allowed to start work on the revival of the GeoTag Patent Applications for a fee.  On November 11, 2013, Abhyanker provided GeoTag with a Power of Attorney ("Power or Attorney" or "POA") to appoint himself and Raj Abhyanker, P.C. (Patent Practitioner 55952) as the attorney/agent to "transact all business" with the USPTO on behalf of GeoTag.  Abhyanker repeatedly stressed that time was of the essence to begin the revival process, and that the parties could worry about a deal later.   GeoTag signed the Power of Attorney, but specifically

instructed Abhyanker that the POA was only to be used for revival of the GeoTag Patent Applications.   The parties continued to discuss potential deals in broad terms, but, at no point did the parties ever reach an agreement on a business deal.

14.     GeoTag was not moving fast enough for Abhyanker on the ownership issue. Abhyanker started making more generous offers to GeoTag, proposing to assign a 50% ownership interest in Abhyanker's nine other Continuation-in-Part Patent Applications ("CIP Applications") to GeoTag in exchange for Abhyanker receiving an equity interest in the GeoTag Patent Applications which were being revived.  Abhyanker stated "I have faith in that we will come up with something equitable together on this."

15.     On or about November 14, 2013, Abhyanker filed a petition to revive the GeoTag Patent Applications (as instructed by the client GeoTag), with the USPTO.

16.     On November 26, 2013, Abhyanker filed his first CIP Application claiming priority for his other patents to the now-revived GeoTag Patent Applications.  On December 9 and 10, 2013, Abhyanker filed additional CIP Applications, which also claimed priority to the GeoTag Patent Applications.

17.     On or about December 12, 2013, Abhyanker advised GeoTag that if an eventual deal involved Abhyanker receiving any title in the GeoTag Patent Applications, GeoTag would need to appoint someone else with the Power of Attorney over the GeoTag Patent Applications, because Abhyanker would have a "conflict of interest" (his words).

18.     On or about December 20, 2013, in the course of performing other searches, GeoTag's IP counsel discovered that Abhyanker had filed numerous CIP Applications which claimed priority to the GeoTag Patent Applications.  Shocked at the brazen scope, GeoTag's IP counsel immediately demanded that Abhyanker disclaim his priority to the GeoTag Patent

Applications as soon as possible. Having been caught, the next day, Abhyanker informed GeoTag and its IP counsel that he had a clear conflict of interest with GeoTag on this matter and must withdraw the power of attorney on the GeoTag Patent Applications.

19.     GeoTag's IP counsel informed Abhyanker that, as GeoTag's counsel of record on the GeoTag Patent Applications, Abhyanker needed to make full disclosure to GeoTag of all of his acts that involved the GeoTag Patent Applications. GeoTag again demanded that Abhyanker disclaim the priority claims. Abhyanker responded immediately: "I cannot disclaim the priority claims to the geotag cases in the continuations because co pendency would be lost. The cleaner alternative would be to abandon the revived geotag cases, and have you both take an interest in the continuations if we can work out a suitable arrangement." Stunned by yet another brazen breach of fiduciary duty, GeoTag demanded a face-to-face meeting with Abhyanker to discuss all of his actions. The meeting was set up for just after the holidays on January 15, 2014.

20.     Even though he had been caught, and even though Abhyanker had acknowledged the "clear" conflict of interest, Abhyanker continued to file CIP Applications claiming priority to the GeoTag Patent Applications during the holidays. Abhyanker acted without informing GeoTag, and in complete disregard of GeoTag's instructions to the contrary.

21.     On January 15, 2014, Abhyanker met with GeoTag in Dallas, Texas, along with several other principals of Fatdoor II and LegalForce. Abhyanker began the meeting by giving a history of himself, the GeoTag Patent Applications, and explaining how he had been ousted from Fatdoor I in the 2007 to 2008 time period. When GeoTag asked about the status of the revival efforts for the GeoTag Patent Applications, Abhyanker informed GeoTag that one of the GeoTag Patent Applications had received a Notice of Allowance.

22.     During the rest of the meeting, Abhyanker went on to explain why the GeoTag Patent Applications had great value to GeoTag. Abhyanker admitted that the GeoTag Patent Applications would also have significant value to him, if he could make a deal with GeoTag. Essentially, Abhyanker wanted to use the GeoTag Patent Applications to prosecute a suit against a company called Nextdoor and, thus, settle his grudge over being ousted from Fatdoor I several years earlier. The gist of Abhyanker's pitch was that he not only needed to be able to prosecute the GeoTag Patent Applications, but he also needed money to sue Nextdoor over those same patent applications.

23.     In an effort to convince GeoTag to invest in Fatdoor II and make a deal with him that involved the GeoTag Patent Applications, Abhyanker explained his company's vision of an automated, online neighborhood, including demonstrating drones and robot toys. After several hours of presentations and discussions, GeoTag's CEO John Veenstra flatly rejected Abhyanker's proposals, in part because there was absolutely no marketing plan for 'deliverables.' When Veenstra made suggestions on how some of the deliverables could be marketed to more lucrative purposes, Abhyanker refused to entertain the ideas because they did not fit his business model. Recognizing that Abhyanker's entire plan was nothing but a lawsuit and a website, GeoTag terminated the meeting with an unequivocal "no."

24.     The next day, Abhyanker emailed GeoTag: "I am disappointed that we did not reach a deal that will mutually work out today,...Let us re-explore in May 2014." Since there was no deal, Abhyanker recommended that GeoTag's regular IP attorneys take over the prosecution of the GeoTag Patent Applications. Abhyanker indicated that he would withdraw from the Power of Attorney by the end of January, 2014.

25.     At that point, GeoTag was ready to be rid of Abhyanker.  GeoTag asked Abhyanker to send GeoTag an invoice for his professional fees associated with reviving the GeoTag Patent Applications. Abhyanker withdrew the Power of Attorney for the GeoTag Patent Applications on or about January 31, 2013.

26.     GeoTag entered into an agreement to sell the GeoTag Patent Applications to IP Analytics.  On February 6, 2014, GeoTag executed an assignment ("IPA Assignment"), transferring full title in the GeoTag Patent Applications to IP Analytics, and warranting full title as part of the sale and assignment.  The IPA Assignment was recorded with the USPTO on February 8, 2014.

27.     In mid-April of 2014, Abhyanker again reached out to GeoTag to request another meeting to discuss more proposals.  On April 21, 2014, Abhyanker left a voice message in which he stated that he had seen the IPA Assignment that assigned the GeoTag Patent Applications to another entity.  Abhyanker wanted to arrange a meeting to discuss finalizing a deal involving the GeoTag Patent Applications and to discuss how to "move forward" with the new owner.  The principals of both GeoTag and IP Analytics were engrossed in other matters during the month of April and declined to meet.

28.     On April 23, 2014, Abhyanker recorded an assignment of the GeoTag Patent Applications with the USPTO (the "Raj Assignment").  Incredibly, the Raj Assignment is signed by Abhyanker on behalf of GeoTag and purports to assign a 50% interest in the GeoTag Patent Applications to Abhyanker.  GeoTag never agreed to grant Abhyanker any ownership interest in the GeoTag Patent Applications, and never authorized Abhyanker to execute any assignments on its behalf.  Abhyanker did not disclose or notify either GeoTag or IP Analytics of the existence or filing of the Raj Assignment.

29.     On or about June 6, 2014, GeoTag discovered the Raj Assignment on the internet. When a copy of the Raj Assignment was obtained from the USPTO, GeoTag and IP Analytics were stunned to see that the Raj Assignment was "dated" January 7, 2014.   If the Raj Assignment was created and signed on January 7, 2014 (which is doubtful), then Abhyanker's entire presentation on January 15, 2014 was a lie.  At all times during the meeting on January 15, 2014, Abhyanker identified the ownership of the GeoTag Patent Applications as being entirely with GeoTag.  One of Abhyanker's stated goals in the meeting on January 15th was to convince GeoTag to enter into an agreement in which Abhyanker would get an ownership interest in the GeoTag Patent Applications.   So, either Abhyanker backdated the Raj Assignment, or Abhyanker engaged in his act of self-dealing and then deliberately concealed his fraud from GeoTag on January 15, 2014.  Further, the Raj Assignment references an "Engagement Letter of November 4, 2013."  No such engagement letter ever existed.  Also, Abhyanker acknowledged on April 21, 2014 that he had seen the Assignment from GeoTag to IP Analytics, and acknowledged at that time that he needed to finalize a deal for the GeoTag Patent Applications with the new owner.

## Causes of Action

### Count I – Breach of Fiduciary Duty to GeoTag

30.     Attorneys owe a fiduciary duty to their clients, and agents owe a fiduciary duty to their principals.  Persons holding powers of attorney owe a fiduciary duty to the transferors of the power of attorney. *Stum v. Stum*, 845 S.W.2d 407, 414-15 (Tex.App.—Fort Worth 1992, no writ).  Among the duties owed by a fiduciary are a duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing, duty to act with integrity of the strictest kind, duty of fair, honest dealing, and duty of full disclosure.

31.     As set forth above, Defendants breached their fiduciary duties to GeoTag. Defendants breached the following fiduciary duties: duty of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing, duty to act with integrity of the strictest kind, duty of fair, honest dealing, and duty of full disclosure.  Attorneys are required to act with integrity and fidelity.  Defendants breached their fiduciary duties to their client GeoTag by failing to act with absolute candor, openness, honesty and without any concealment or deception, by engaging in self-dealing and failing to follow the client's instructions.  Defendants' breaches resulted in injury to Plaintiffs and/or a benefit to the Defendants.  Plaintiffs sue Defendants for actual, consequential and exemplary damages.

### Count II – Malpractice/Professional Negligence

32.     As set forth above, Defendants conduct fell below the standard of care for attorneys practicing in the field of patent law.  Defendants failed to act as a reasonably prudent attorney/law firm under the same or similar circumstances.  Defendants were professionally negligent in the handling of the GeoTag Patent Application revival in numerous ways, including but not limited to, disobeying the client's instructions, self-dealing and putting their own interests above those of their client, GeoTag.  Defendants' actions caused damage to Plaintiffs. Plaintiffs sue Defendants for actual, consequential and exemplary damages.

### Count III – Conversion

33.     As set forth above, Defendants wrongfully exercised dominion and control over the Plaintiffs' property in a manner inconsistent with Plaintiffs' rights.  Defendants' wrongful acts constitute conversion and caused damage to Plaintiffs.  Plaintiffs sue Defendants for actual and exemplary damages.

### Count IV – Unjust Enrichment/Constructive Trust

34.     As set forth above, Defendants are claiming a priority based upon the GeoTag Patent Applications by making a false claim of ownership.  Defendants have been unjustly enriched by wrongfully taking Plaintiff's property rights. Defendants have wrongfully secured a benefit or have passively received one which it would be unconscionable for them to retain.

35.     Plaintiffs have suffered actual and consequential damage, in addition to the unjust enrichment of the Defendants.

36.     In addition or in the alternative to damages, Plaintiffs plead for constructive trust. As shown above Defendants have committed a breach of a special trust, or fiduciary relationship, or actual fraud; unjust enrichment of the wrongdoer; and the GeoTag Patent Application ownership is readily identifiable as a property right.

### Count V – Slander of Title/Clear Title/Declaratory Judgment

37.     As set forth above, Defendants committed slander of title.  GeoTag possessed, and IP Analytics possesses, an interest in property, the GeoTag Patent Applications.  Defendants uttered and/or published false statements which cast doubt on the ownership of the property.  The statements were published deliberately and without legal cause, which caused damage to Plaintiffs.  Plaintiffs sue Defendants for actual and exemplary damages.

38.     Plaintiffs seek a declaratory judgment that the Raj Assignment is invalid, void and unenforceable.  Plaintiffs pray that the Raj Assignment be set aside.  Plaintiffs seek recovery of their attorney fees incurred in seeking the declaratory judgment.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs GeoTag, Inc. and IP Analytics, LLC pray that Defendants Raj V. Abhyanker and Raj Abhyanker, P.C. d/b/a Legalforce and d/b/a Legalforce R.A.P.C. Worldwide be cited to appear herein and answer, and that upon final hearing, the Court enter judgment in favor of Plaintiffs and against Defendants as set forth

above, the Court award Plaintiff its costs and attorney's fees, and such other and further relief whether special or general, at law or in equity to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,


/s/ Tom C. Clark_____
Tom C. Clark
Texas Bar No. 04298750
Mark J. Zimmermann
Texas Bar No. 22276420
Dealey, Zimmermann, Clark, Malouf & Blend, P.C.
3131 Turtle Creek Blvd., Ste. 1201
Dallas, Texas 75219
(214) 559-4400
(214) 559-4466 (fax)
tclark@texlex.com
mz@texlex.com

—and—

Todd S. Spickard
Texas Bar No. 90001645
Spickard Law P.C.
3131 Turtle Creek, Suite 300
Dallas, Texas 75219
(214) 526-9000
(214) 276-7553 (fax)
todd@spickardlaw.com

COUNSEL FOR PLAINTIFFS GEOTAG, INC.
and IP ANALYTICS, LLC